1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

GARY WANG,

          Plaintiff,

    v.

EHANG HOLDINGS LIMITED, et al.,

          Defendants.

Case No.  20-cv-00569-BLF

**ORDER DENYING DEFENDANTS'
MOTION TO COMPEL
ARBITRATION AND DISMISS
CLAIMS OR, ALTERNATIVELY, TO
STAY PROCEEDINGS PENDING
ARBITRATION**

[Re:  ECF 62]

Before the Court is Defendants' motion to compel arbitration and dismiss the action or, alternatively, to stay proceedings pending arbitration.  *See* Mot., ECF 62.  After completion of the briefing, the Court submitted the motion for decision without oral argument.  *See* Order Vacating Hearing, ECF 95.  The motion is DENIED for the reasons discussed below.

Plaintiff Gary Wang ("Wang") filed this suit on January 24, 2020, asserting claims arising out of his former employment with related companies that he refers to collectively as "EHang" or "EHang Group."  *See* Compl., ECF 1.  The named defendants are EHang Holdings Limited ("EHang Holdings"), Guangzhou EHang Intelligent Technology Co., Ltd. ("EHang Intelligent"), and corporate officers Huazhi Hu, Derrick Yifang Xiong, Shang-Wen Hsiao, and Richard Jian Liu.  *See id.*  Defendants filed motions to dismiss the original complaint and the first amended complaint, after which Wang filed the operative second amended complaint ("SAC") on February 3, 2021.  Defendants did not move to dismiss the SAC, and they filed an answer on February 17, 2021.  *See* Answer, ECF 56.

In the SAC, Wang alleges that when he interviewed for a position with EHang Group in 2015, he was told that his compensation package would include shares of EHang Group's parent

United States District Court
Northern District of California

company, EHang Holdings.  *See* SAC ¶¶ 10-11.  EHang Intelligent offered Wang the position of General Manager of its United States office, located in Silicon Valley, California.  *See id.* ¶¶ 13-14 & Exh. A.  The Offer Letter stated that Wang's initial compensation would include "Restricted Share Units (RSUs) of **516,428 ordinary shares which represents 0.6% of the Company outstanding shares post A round funding** as incentive equity granted from the day 1 of on-boarding, and vested 25% annually in four years."  Offer Letter, SAC Exh. A (bold in original). Wang understood the Offer Letter to be referring to shares of the parent company, EHang Holdings.  *See* SAC ¶ 16.  The Offer Letter advised that "[t]he equity grants will be governed by the terms of the Company's ESOP plans and your Award Agreements," and explained that the award agreements contain restrictions on competing with EHang and soliciting EHang employees after termination of employment.  Offer Letter, SAC Exh. A.  Wang accepted the position and signed the Offer Letter on July 23, 2015.  *See id.*  Wang worked at EHang Group's United States office in San Carlos, California.  *See* SAC ¶ 10.

Wang resigned from EHang effective August 31, 2016.  *See* SAC ¶ 18.  By that date, Wang asserts, one quarter of his 516,428 shares in EHang Holdings (129,107 shares) had vested. *See id.* ¶ 18.  Wang claims that he requested those stock certificates several times in the months following his resignation, but he was told that he had to wait until an Employee Stock Option Plan ("ESOP") was approved.  *See id.* ¶¶ 19-21.  Wang claims that eventually Defendants simply stopped responding to him and that Defendants never did issue him the stock certificates.  *See id.* ¶¶ 22-24.  He sues for breach of contract, fraud, and unpaid wages.  *See* SAC ¶¶ 26-48.

Defendants now seek to compel arbitration of Wang's claims pursuant to an arbitration provision contained in an ESOP that was adopted several months *after* Wang terminated his employment.  Specifically, Defendants point to EHang Holdings' 2015 Share Incentive Plan ("the ESOP"), which provides that it "shall be construed in accordance with and governed by the laws of the Cayman Islands," and that any dispute arising out of or related to the Plan shall be settled by arbitration in Hong Kong in accordance with the UNCITRAL Arbitration Rules.  ESOP ¶ 12.14. Defendants' discovery responses make clear that the ESOP was not adopted until December 2016, several months after Wang's August 2016 resignation.  *See* Defs.' Responses to Plaintiff's First

United States District Court
Northern District of California

1    Set of Interrogs. at 6:15-16, Pierz Decl. Exh. A, ECF 68-2.

2         Wang asserts that the motion must be denied on several grounds.  First, he asserts that

3    Defendants cannot establish that he agreed to the arbitration provision.  Next, Wang argues that

4    even Defendants could make that threshold showing, enforcing the arbitration provision in this

5    case would be procedurally and substantively unconscionable.  Wang also argues that his claim for

6    unpaid wages under the California Labor Code is exempted from arbitration.  Finally, Wang

7    argues that Defendants have waived the right to compel arbitration by litigating this suit for more

8    than a year.

9         Wang's first argument is dispositive.  "[A]rbitration is a matter of contract and a party

10   cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT

11   & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation marks and

12   citation omitted).  Whether the parties formed an agreement to arbitrate is resolved under

13   "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc.*

14   *v. Kaplan*, 514 U.S. 938, 944 (1995).  As the parties seeking to compel arbitration, Defendants

15   bear the burden of proving the existence of an agreement to arbitrate by a preponderance of the

16   evidence. *See Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir.

17   2017).  As discussed below, Defendants have failed to meet that burden.

18        Defendants argue that although the ESOP was not adopted until after Wang left his

19   employment with EHang, its terms – including the arbitration provision – were incorporated into

20   the Offer Letter extended by EHang Intelligent on July 23, 2015 and signed by Wang on the same

21   date. *See* Offer Letter, SAC Exh. A.  Defendants rely on language in the Offer Letter stating that

22   "[t]he equity grants will be governed by the terms of the Company's ESOP plans and your Award

23   Agreements." *Id*.  In determining whether the Offer Letter incorporates the arbitration provision

24   contained in the later-adopted ESOP, the Court applies California law.[1]

25

26   [1] A federal court sitting in diversity applies the forum state's choice-of-law principles to determine the substantive law applicable to interpretation of a contract. *See Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007).  In California, absent a choice of law by the parties, a contract is interpreted under the law of the place of performance. *Id*.  Because the place of performance was California, the Court applies California law in determining whether the parties formed an agreement to arbitrate.

27

28

United States District Court
Northern District of California

1    "California law is clear that there is no contract until there has been a meeting of the minds

2    on *all* material points." *Banner Ent., Inc. v. Superior Ct. (Alchemy Filmworks, Inc.)*, 62 Cal. App.

3    4th 348, 357-58 (1998), *as modified* (Mar. 30, 1998) (emphasis in original).  California law allows

4    an arbitration clause contained in one document to be incorporated by reference into another, but

5    the law requires that the reference be "clear and unequivocal" and "the terms of the incorporated

6    document be known or easily available to the party to be bound." *Chan v. Drexel Burnham*

7    *Lambert, Inc.*, 178 Cal. App. 3d 632, 644 (1986).  The Offer Letter's reference to "the Company's

8    ESOP plan*s*" does not meet this standard.  The language in question clearly contemplates multiple

9    ESOP plans, and therefore it does not clearly and unequivocally refer to the ESOP upon which

10   Defendants rely.  Moreover, since the ESOP did not yet exist at the time Wang signed the Offer

11   Letter, its provisions could not have been known or easily available to Wang at that time.  Wang

12   submits a declaration stating he was never presented with the ESOP and that no one at EHang ever

13   told him that a dispute over the shares would be subject to arbitration.  *See* Wang Decl. ¶¶ 3-4,

14   ECF 68-1.  Wang states that he was not made aware of the terms of the ESOP until January 2021,

15   when a copy of the ESOP was produced during discovery.  *See id.* ¶ 3.  Defendants offer no

16   evidence that Wang was aware of and agreed to an arbitration provision when he signed the Offer

17   Letter.

18       Defendants' motion to compel arbitration is DENIED on the basis that Defendants have

19   failed to meet their burden of proving the existence of an agreement to arbitrate.  Having resolved

20   the motion on this ground, the Court need not and does not address the parties' additional

21   arguments.

22                                            **ORDER**

23       Defendants' motion to compel arbitration and dismiss the action or, alternatively, to stay

24   proceedings pending arbitration, is DENIED.

25       This order terminates ECF 62.

26

27   Dated:  October 5, 2021

28                                            BETH LABSON FREEMAN
                                              United States District Judge

                                              4