**LILAW INC.**
J. James Li (SBN 202855)
Richard D. Lambert (SBN 251148)
Daniel R. Peterson (SBN 326798)
1905 Hamilton Avenue, Suite 200
San Jose, California 95125
Telephone: (650) 521-5956
Facsimile: (650) 521-5955
Emails: lij@lilaw.us, lambertr@lilaw.us, & petersond@lilaw.us

Attorneys for Plaintiff GARY WANG

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY WANG, an individual,<br><br>　　　　Plaintiff,<br>　　v.<br><br>EHANG HOLDINGS LIMITED, a Cayman Islands corporation, GUANGZHOU EHANG INTELLIGENT TECHNOLOGY CO., LTD., a Chinese corporation, HUAZHI HU, an individual, DERRICK YIFANG XIONG, an individual, SHANG-WEN HSIAO, an individual, RICHARD JIAN LIU, an individual, and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | **Case No. 5:20-cv-00569-BLF**<br><br>**THIRD AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |



# PARTIES

1. Plaintiff Gary Wang ("Plaintiff") is an individual who has resided in Santa Clara County, California for all relevant time.

2. On information and belief, Defendant EHang Holdings Limited ("EHang Holdings") is a Cayman Islands corporation with its principal place of business located at Building C, Yixiang Technology Park, No.72 Nanxiang Second Road, Huangpu District, Guangzhou, 510700, People's Republic of China (the "EHang Address").

3. EHang Holdings is the ultimate parent company of a group of companies which are collectively referred to as the "EHang Group." On information and belief, EHang Group is in the business of developing, marketing and selling aerial drones.

4. On information and belief, Defendant Guangzhou EHang Intelligent Technology Co., Ltd. ("EHang Intelligent Technology") is a Chinese corporation with its principal place of business located in Guangzhou, China at the EHang Address.

5. On information and belief, Defendant Huazhi Hu ("Hu") is EHang Group's co-founder, Chairman and Chief Executive Officer, and a resident of China.

6. On information and belief, Defendant Derrick Yifang Xiong ("Xiong") is the EHang Group's co-founder, director and Chief Marketing Officer, and a resident of China.

7. On information and belief, Defendant Shang-Wen Hsiao ("Hsiao") is the EHang Group's co-founder and its former Chief Financial Officer, and a resident of China.

8. On information and belief, Defendant Richard Jian Liu ("Liu") is EHang Group's current Chief Financial Officer and a resident of China.

# NATURE OF ACTION

9. This is an Action for breach of contract, fraud, failure to pay wages and unfair competition.

# GENERAL ALLEGATIONS

10. Plaintiff was the general manager of EHang Group's United States office. Plaintiff was initially contacted by Defendant Xiong for potential employment with EHang Group. Xiong interviewed Plaintiff at EHang Group's U.S. office located at San Carlos, California. Xiong told

Plaintiff that if Plaintiff worked for the EHang Group, the EHang Group would award him shares of the group's parent company, which he later learned to be EHang Holding, as part of his compensation for working for the EHang Group.

11. On June 18, 2015, EHang Group flew Plaintiff to Guangzhou, China for his final round of interview with various management personnel including Defendant Hu. During that interview, Defendant Hu, Xiong, and others explained to Plaintiff the corporate structure of the EHang Group as of 2015 using a flow chart similar to Fig. 1 below, which is a true and correct copy of a flow chart provided by Defendant Xiong in or about July 2015.



Fig. 1. EHang Group's component companies in 2015 when Plaintiff joined the group.

12. The EHang Group's management in essence represented to Plaintiff the following relevant corporate structure of the EHang Group as of 2015 when he was joining the company:



a. Defendant Ehang Holdings was the ultimate parent company of the EHang Group and all the employees' incentive shares would be shares of EHang Holdings.

b. Defendant EHang Intelligent Technology based in Guangzhou, China was the actual revenue-generating technology entity of the EHang Group and was a wholly owned subsidiary of EHang Holdings. EHang Intelligent Technology's headquarters in Guangzhou is EHang Group's operational center where all research, development, sales, marketing and executives were located. EHang Holdings and Ehfly Technologies Ltd. (Hong Kong) were just shell companies without any employees.

c. EHang Holdings had a wholly owned subsidy named Ehfly Technologies Ltd. based in Hong Kong which in turn had a wholly owned subsidiary, EHang, Inc., based in California.

d. EHang, Inc. was the *de facto* U.S. office of the EHang Group whose office space would be Plaintiff's base in the United States, although he would be working closely with EHang Group's headquarters in Guangzhou, China.

13. While he was interviewing with EHang Group, Plaintiff was told that the entity that would officially employ him should be Defendant EHang Intelligent Technology because it was the main revenue-generating entity. At the time, Plaintiff researched EHang Intelligent Technology's corporate status in China, including corporate certification, tax registration, and business license. As shown by these corporate documents, the English name "Guangzhou EHang Intelligent Technology Co., LTD" is a direct translation of the company's Chinese name, 广州亿航智能技术有限公司.

14. Consequently, an offer letter to Plaintiff was issued by Defendant EHang Intelligent Technology, a true and correct copy of which is attached hereto as Exhibit A (the "Offer Letter). The Offer Letter was signed by Defendant Hsiao on behalf of "EHang Intelligent Technology" which is the English name of Defendant "Guangzhou EHang Intelligent Technology Co., Ltd" without the city name "Guangzhou" and the words "Co., Ltd." Plaintiff signed the Offer Letter on behalf of himself.

15. Although Defendants now strangely claim that the Offer Letter's signatory "EHang Intelligent Technology" is not Defendant Guangzhou EHang Intelligent Technology Co., Ltd., such claim has zero credence. As shown in Figure 1 above, other than Defendant EHang Intelligent



3                                     Case No. 5:20-cv-00569-BLF

Technology, there was no company inside the EHang Group that has the name "EHang Intelligent Technology" as the main part of its name. Both signatories of the Offer Letter, Defendant Xiong and Plaintiff, knew at the time of signing the Offer Letter that the company making the employment offer to Plaintiff was Guangzhou EHang Intelligent Technology Co., Ltd., i.e., Defendant EHang Intelligent Technology. It is not just a matter of pleading at this point; it is essentially proven by a preponderance of evidence that the signatory employer of the Offer Letter is Defendant EHang Intelligent Technology.

16.  As set forth in the Offer Letter, other than his cash compensation, Plaintiff was supposed to earn 516,428 shares or 0.6% of EHang Holdings' capital stock with a 25% annual vesting schedule.

17.  Plaintiff's employment with Defendant EHang Intelligent Technology officially started on July 20, 2015. He managed all of EHang Group's businesses and operations in the United States.

18.  After approximately one year, Plaintiff was experiencing some health issues and decided to take some time off. Plaintiff notified EHang Intelligent Technology his resignation from EHang on August 2, 2016. His last day at EHang Intelligent Technology was August 31, 2016. By then, one quarter of his 516,428 shares, i.e., 129,107 shares, of EHang Holdings had vested.

19.  Shortly before his resignation, in July 2016, Plaintiff asked EHang Intelligent Technology about issuing stock certificate for his vested shares. On July 24, 2016, Defendant Liu, responded to Plaintiff in the following way by a WeChat text message:

> I am sorry to respond to you so late. The RSU[1] must be issued under the Company's ESOP[2]. Currently the Company's ESOP has yet to be approved by the Board of Directors. No one has been issued [the RSU]. Further, if we issue it now, our understanding under the U.S. tax law you would probably have to pay a high amount of U.S. tax. And the RSU you receive is not tradable, thus has uncertain future value.

20.  Defendant Liu and Hsiao confirmed to Plaintiff in July 2016 that the shares awarded by the Offer Letter were indeed shares of EHang Holdings.

---

[1] "RSU" stands for "Restricted Stock Units" which are the name of the shares that Plaintiff received from EHang.
[2] "ESOP" stands for "Employee Stock Option Plan."



LiLaw Inc.

4      Case No. 5:20-cv-00569-BLF
THIRD AMENDED COMPLAINT

21. From August to November 2016, Plaintiff asked Hsiao, CFO of EHang Intelligent Technology at the time, for the stock certificates several times. On September 18, 2016, Hsiao told Plaintiff that he had to wait until mid or late October when the stock plan was approved. In October 2016, when Plaintiff did not hear back from EHang Intelligent Technology regarding issuing the stock certificates, he proposed to Hsiao that the company should buy back his shares at the discounted price of $1 per share. Hsiao said the company would consider it. In November 2016, Plaintiff again contacted Hsiao by WeChat messaging inquiring about the share buyback matter, Hsiao again told him "to wait a little more."

22. In December 2016, Plaintiff again sent Hsiao a WeChat message asking about the stock matter. Hsiao never responded to the message. On February 23, 2017, Plaintiff sent an email to Hsiao to again request that the company to either buy back his vested shares or issue a stock certificate for the shares. Attached as Exhibit B is a true and correct copy of the email. Hsiao did not respond to the email.

23. In early November 2019, Plaintiff learned that EHang Holdings had just filed Form F-1 to be listed on the NASDAQ stock market. By reading EHang Holdings' F-1 form filed with the Security Exchange Commission, Plaintiff learned that Restricted Share Units had been issued to directors, officers and employees based on a 2015 Share Inventive Plan (the "2015 Plan"). This was the first time that Plaintiff had any notice of the approval of the long-delayed stock plan which Defendants had used as an excuse for not issuing stock certificate for his vested shares. EHang Holdings' F-1 form can be found online at https://www.sec.gov/Archives/edgar/data/1759783/000119312519280594/d515413df1.htm and is incorporated by reference as if fully set forth herein.

24. On November 11, 2019, Plaintiff wrote an email to Defendant Liu, EHang Intelligent Technology's current CFO, copied to Defendant Hu and Xiong. The email congratulated Defendants on the filings for the Initial Public Offering of EHang Holdings and again asked for the issuance of stock certificate. Neither Liu nor anyone else from EHang responded to the email request for stock certificate.

25. From EHang Holdings' F-1 form, Plaintiff also learned of the following information



which he had not known:

    a. EHang Intelligent Technology is not a wholly owned subsidiary of EHang Holdings, as it was represented to him in 2015, but a Variable Interest Entity ("VIE") controlled via contracts by a wholly owned subsidiary of EHang Holdings named EHang Intelligent Equipment (Guangzhou) Co., Ltd., which is obviously not the same company as Defendant EHang Intelligent Technology.

    b. EHang Intelligent Equipment was established in October 2015, three months after Plaintiff had started working for EHang Intelligent Technology, which explains the difference in the component company chart of EHang Group shown to Plaintiff in 2015 (Fig. 1) and the current chart shown in Exhibit C, which is a true and correct copy of page 74 of the F-1 form of Ehang Holdings.

    c. EHang Intelligent Equipment obtained control over Defendant EHang Intelligent Technology through contracts in January 2016, five months after Plaintiff had started working for EHang Intelligent Technology.

## COUNT ONE
### Breach of Contract
**(Against EHang Intelligent Technology and EHang Holdings)**

26. Plaintiff incorporates by reference the foregoing averments as if fully set forth herein.

27. Plaintiff's Offer Letter signed by Plaintiff and EHang Intelligent Technology (the "Agreement") is a binding contract between Plaintiff and EHang Intelligent Technology. The Agreement is also a binding contract between Plaintiff and EHang Holdings as the latter's shares were promised to Plaintiff by EHang Intelligent Technology, which acted as EHang Holdings' agent in signing the Agreement.

28. Although Defendants now deny that EHang Intelligent Technology was EHang Holdings' agent in promising to Plaintiff EHang Holdings' shares, such denial at most goes to the existence of express agency, which is expressly alleged here in case there is any ambiguity. Thus, Defendants' quibbling over agency is an issue of evidence instead of pleading as there is more than a plausibility of an express agency between EHang Intelligent Technology and EHang Holdings.

29. EHang Intelligent Technology was at least EHang Holdings' apparent agent. The two

companies have nearly complete overlapping executives. EHang Intelligent Technology was the wholly owned subsidiary of EHang Holdings and also the main revenue producing entity of the EHang Group at the time of Plaintiff's employment. The executives like Hu and Xiong who promised EHang Holdings stocks in connection with the Offer Letter was also EHang Holdings' executives. Plaintiff's job was to manage the U.S. office for the entire EHang Group, although he was officially an employee of EHang Intelligent Technology. Thus, it is reasonable for Plaintiff to infer that EHang Intelligent Technology had the authority granted by EHang Holdings as the latter's agent to promise EHang Holdings' stocks to him as part of his compensation for being EHang Intelligent Technology's employee.

30. EHang Holding is also a required party in this case because the stocks at issue are its stocks.

31. Plaintiff has performed his obligations under the Agreement by working for EHang Intelligent Technology as the general manager of the U.S. office of EHang Intelligent Technology as well as the entire EHang Group from July 20, 2015 to August 31, 2016. According to the terms of the Agreement, 129,107 shares of EHang Holdings' stock awarded to Plaintiff had been vested by the time when Plaintiff resigned from EHang Intelligent Technology.

32. EHang Intelligent Technology has breached the Agreement by refusing to either issue a stock certificate for the 129,107 shares or buy back the shares as requested by Plaintiff.

33. EHang Intelligent Technology has never denied Plaintiff's ownership of the 129,107 shares. Until November 2019, Plaintiff believed EHang Intelligent Technology's repeated claim that it could not issue the shares to Plaintiff because the Board of Directors of EHang Holdings had yet to approve the employee stock plan under which the shares were to be issued.

34. Only recently did Plaintiff learned of Defendants' misrepresentation regarding the employee stock plan by reviewing EHang Holdings' F-1 Form filed with the Security Exchange Commission for its initial public offering.

35. EHang Intelligent Technology and EHang Holdings have breached their contractual obligation by refusing to issue the 129,107 shares of EHang Holdings to Plaintiff and by concealing their breach using intentional misrepresentation and false promise.



36. EHang Intelligent Technology's breach has caused significant damages to Plaintiff in an amount equal to the fair market value of the withheld 129,107 shares of EHang Holdings.

## COUNT TWO
### Fraud
### (Against all Defendants)

37. Plaintiff incorporates by reference the foregoing averments as if fully set forth herein.

38. Defendants made intentional misrepresentation and false promise to Plaintiff. Defendants Xiong, Hu and Hsiao made misrepresentation to Plaintiff regarding EHang Group's corporate structure especially about EHang Intelligent Technology being a wholly owned subsidiary of EHang Holdings. Defendants Xiong, Hu and Hsiao also misrepresented EHang Group's plan to grant Plaintiff a substantial number of shares as part of Plaintiff's compensation for working for EHang Intelligent Technology as the general manager of its U.S. office. In reality, EHang Intelligent Technology never had any plan or intent to grant Plaintiff any shares of EHang.

39. Through Xiong, Hu and Hsiao, EHang Intelligent Technology and EHang Holdings made false promise to Plaintiff by promising to award Plaintiff a certain number of shares of EHang Holdings with a four-year vesting schedule. The false promise is memorialized in the offer letter to Plaintiff signed by Hsiao on behalf of EHang Intelligent Technology. At the time of making the promise, EHang Intelligent Technology and EHang Holdings never intended to honor the promise.

40. Defendants Hsiao and Liu also made intentional misrepresentation and false promise to Plaintiff regarding why EHang Holdings could not issue the share certificate to Plaintiff. Hsiao and Liu acted on behalf of EHang Intelligent Technology and EHang Holdings in committing the fraudulent acts toward Plaintiff.

41. All Defendants acted in conspiracy with each other in committing the fraud against Plaintiff. On information and belief, there was an explicit or implied agreement among Defendants to defraud Plaintiff on the shares and they intended the fraud to be committed on Plaintiff.

42. Plaintiff relied on Defendants' misrepresentation and false promise regarding the share awards by taking a much lower than normal salary in light of the promised stocks and worked for EHang Intelligent Technology for over a year.

43. Plaintiff relied on Defendants' misrepresentation and false promise regarding why

EHang could issue the shares by not resorting to legal action and thus significantly delayed his receipt of the shares, resulting in significant tax liability if such shares are conveyed to him after EHang Holdings' IPO.

44. Defendants' fraud thus has caused significant damages to Plaintiff.

45. Defendants acted malice, oppression or fraud in committing the fraudulent acts which entitles Plaintiff to punitive damages in addition to compensatory damages.

## COUNT THREE

**For Unpaid Wages, Penalties and Interests under Lab. Code §§ 201 & 203, et seq.**
**(Against EHang Intelligent Technology, EHang Holdings, and Hu)**

46. Plaintiff incorporates by reference the foregoing averments as if fully set forth herein.

47. Under the Agreement, EHang Intelligent Technology and EHang Holdings were obligated to issue to Plaintiff 129,107 shares of EHang Holdings' capital stock as part of Plaintiff's wages for being an employee of EHang Intelligent Technology. EHang Holdings' liability is based on the action of its agent, EHang Intelligent Technology, in promising the principal's shares to Plaintiff as part of Plaintiff's compensation for his employment under EHang Intelligent Technology and the EHang Group. EHang Holdings is also a required party under this claim because without EHang Holdings there would not be a complete relief for Plaintiff.

48. Ehang Intelligent Technology, Ehang Holdings, and Hu were co-employers of Plaintiff because they directly or indirectly employed Plaintiff and/or exercised control over Plaintiff's wages, hours, or working conditions under *Martinez v. Combs*, 49 Cal. 4th 35, 60 (2010).

49. EHang Intelligent Technology, EHang Holdings and Hu have willfully violated the labor law by refusing to provide Plaintiff with the 129,107 shares of EHang Holdings. Under Lab. Code §§ 201, 203, EHang Intelligent Technology, EHang Holdings and Hu are liable for the value of the shares withheld, interest and penalties. Plaintiff is also entitled to recover his attorney's fees and costs under Lab. Code § 218.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:



a. The Court shall issue an order compelling EHang Holdings to issue 129,107 shares of its capital stock to Plaintiff;

b. The Court shall award compensatory damages, statutory penalties, and/or restitutions according to the proof;

c. The Court shall award punitive damages;

d. The Court shall permanently enjoin Defendants from committing any further fraud;

e. The Court shall award reasonable attorney's fees to Plaintiff according to the proof;

f. The Court shall award costs of suit herein incurred to Plaintiff;

g. The Court shall award prejudgment interest at the maximum legal rate as allowed by the law; and

h. The Court shall award such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED:  March 7, 2022            **LILAW INC.**
                                 Attorney for Plaintiff GARY WANG

                                 By  /s/J. James Li
                                 _____
                                 J. James Li, Ph.D.



# Exhibit A

Privacy Information Redacted

OFFER LETTER (EHANG CONFIDENTIAL)

Dear Gary,

I am very delighted to offer you the position of General Manager of the U.S. Office of Ehang Intelligent Technology ("Ehang" or the "Company"), you will be reporting to Mr. HU Huazhi, Founder and Chief Executive Officer ("CEO") of the Company, and locate in Sillicon Valley, California, U.S.. Your on-boarding date is July 20, 2015. Your job responsibilities will include, but may not be limited to, the following:

- To manage and supervise the operation of Ehang US office according to the business plan directed by the CEO,
- Other ad-hoc projects and matters that CEO assigns.

Your initial compensation will be comprised as follows:

- **US$ 150,000** annual salary on a pre-tax basis
- Restricted Share Units (RSUs) of **516,428 ordinary shares which represents 0.6% of the Company outstanding shares post A round funding** as incentive equity granted from the day 1 of on-boarding, and vested 25% annually in four years.

The equity grants will be governed by the terms of the Company's ESOP plans and your Award Agreements. The award agreements contain restrictions on competing with Ehang and soliciting Ehang employees following termination of employment. The agreements, which may change in the future, currently provide that an executive will pay back any cash or shares s/he received under the ESOP plans prior to his departure if the restrictions are violated.

Your benefits on annual leave, sick leave and general allowances will follow company policies, and please refer to each benefit program on specific and detailed program eligibility and policy.

As the Company is a fast growing startup company and needs time and efforts to develop and complete its policies, we sincerely hope you can acknowledge and appreciate that the Company is trying its best to formulate the relevant detailed benefit programs and policies and will provide such as soon as available.

The initial term is four (4) years including a probation period of 3 months.

Attachment A contains information regarding certain conditions of your employment – please review carefully and make sure you agree with these conditions.

This offer will be valid for you to sign and return one copy to us in a week. The offer will be forfeited if you cannot meet the aforementioned date.

Once again, I am very excited to extend you this offer and look forward to your acceptance and your success with Ehang. Please indicate your acceptance of this offer by signing and sending a copy of the letter to the attention of Mr. Shang Hsiao, the CFO of the Company.

OFFER LETTER (EHANG CONFIDENTIAL)

Should you have any questions, please don't hesitate to contact us.

Sincerely,

*[signature]*

Shang Hsiao
Co-founder & Chief Financial Officer
Ehang Intelligent Technology

Date: *July 23, 2015*

Attachments: Ehang Pre-Employment Process – Attachment A

I agree to the terms and conditions stipulated in this offer letter.

Signed by the recipient: *Gang Wang*

Passport No: ▓▓▓▓41

Date: July 23, 2015

OFFER LETTER (EHANG CONFIDENTIAL)

**Attachment A**
**Ehang Pre-Employment Process**

As is customary at Ehang, this offer is contingent upon the completion of our pre-employment process, including verification of your application materials and your ability to work for Ehang without restriction (which means you do not have non-compete obligations or other restrictive clause with your current or former employer, or any non-compete or other restrictions have been disclosed by you and resolved to Ehang's satisfaction).

Ehang employees are required to comply with Ehang's Business Conduct Guidelines and will be required to acknowledge receipt and compliance with the guidelines.

Similar to all Ehang employees, your employment is at will, and either you or Ehang have the right to terminate your employment for any reason, with or without cause, but one-month prior written notice from each side is mandatory. This provision cannot be modified except in writing by the CFO of the Company.

The signature of this offer letter will not signify the establishment of the employment relationship between you and Ehang. Once a written Employment Contract is signed, this offer letter will become your first Engagement Agreement and be an integral part of your Employment Contract with an equal effect as the Employment Contract. If your Employment Contract is terminated or ended, this offer letter (i.e. your first Engagement Agreement) shall be terminated or ended along with the Employment Contract.

On your first day of employment you will be required to sign Ehang's form regarding confidential information and intellectual property.

# Exhibit B

**From:** Gary Wang gwang001@yahoo.com
**Subject:** RSU stocks
**Date:** February 23, 2017 at 10:13 AM
**To:** 尚文 Shang 蕭 Hsiao shang.hsiao@ehang.com
**Cc:** GANG WANG gwang001@gmail.com

Hi Shang,

I hope this email finds you well. I saw the news regarding Ehang 184 in Dubai, Congratulations!

Just want to check in to see where we are in terms of the RSU stocks the company owes me. It has been almost 6 months since I left the company and we should resolve the issue in a timely manner.

In my view, it is quite straightforward, I signed up to join the company partly because of the options granted and I worked for a year and I should be entitled to 1/4 of the stocks granted. I see there are two potential options:

1. Ehang to re-purchase the stocks I vested, at a mutually agreed price.
2. If Ehang does not want to re-purchase the stock or the price to purchase could not be agreed upon mutually, Ehang should issue a stock certificate to me, and I will become a share holder of the company 

The fact that Ehang did not have an ESOP plan in place when the company made offer with RSU/stocks to employees,
is an internal compliance issue the company has to address itself promptly. It should not drag this long and have the
ex-employees to bear this result of the non-compliance issue of the company.

I prefer to have this issue resolved in a timely manner so that we can both move on. Please advise.

Thanks

Gary
408-431-4535

# Exhibit C

The chart below summarizes our corporate structure and identifies our significant subsidiaries, the VIE and its significant subsidiaries, as of the date of this prospectus:



Notes:
(1) Messrs. Huazhi Hu and Derrick Yifang Xiong are directors and beneficial owners of our company and hold 95.0% and 5.0% equity interests in EHang GZ, respectively.
(2) The remaining 40.0% equity interest in EHang Egret is held by Mr. Lei Shi, an executive officer of EHang Egret.

**Contractual Agreements with our VIE and its Shareholders**

The following is a summary of the currently effective contractual arrangements by and among our WFOE, the VIE and its respective shareholders.

*Contractual Agreements that Provide Us with Effective Control over the VIE*

*Power of Attorney and Shareholders Voting Proxy.* Each of the shareholders of EHang GZ has executed an irrevocable power of attorney and irrevocable shareholders voting proxy on January 29, 2016 (which were subsequently amended on November 30, 2018), to irrevocably authorize EHang Intelligent, our WFOE, to act as his attorney-in-fact to exercise all of his rights as a shareholder of EHang GZ, including, but not limited to, the right to (i) attend shareholders' meetings, (ii) vote on any resolution that requires a shareholder vote pursuant to the applicable laws and memorandum and article of association of EHang GZ, such as the sale and transfer of all or part of the equity interests owned by such shareholder, (iii) designate and appoint directors, and senior management. The power of attorney will remain effective continuously since January 29, 2016, and our WFOE is entitled to re-authorize or assign its rights relating to the equity interests to any other person or entity at its own discretion and without providing prior notice or obtaining prior consent from EHang GZ. In February 22, 2019,

74