1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6

**SAN JOSE DIVISION**

7
8

GARY WANG,

Case No. 20-cv-00569-BLF

9

Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR NEW TRIAL**

10

v.

11

EHANG HOLDINGS LIMITED, et al.,

[Re: ECF 211]

12

Defendants.

13
14
15

Plaintiff Gary Wang ("Wang") tried this action to a jury in April 2022, asserting

16

employment-related claims against Defendants EHang Holdings Limited ("EHang Holdings"),

17

Guangzhou EHang Intelligent Technology Co., Ltd. ("EHang Intelligent"), Huazhi Hu ("Hu"),

18

Derrick Yifang Xiong ("Xiong"), Shang-Wen Hsiao ("Hsiao"), and Richard Jian Liu ("Liu"). The

19

jury rendered a verdict on April 11, 2022, finding liability against EHang Holdings, EHang

20

Intelligent, and Hu, awarding compensatory damages in the amount of $3,500,000, and awarding

21

punitive damages in the amount of $15,000,000. *See* Verdict, ECF 183. The jury found no

22

liability against Xiong, Hsiao, or Liu. *See id.* The Court entered judgment consistent with the

23

jury's verdict on April 28, 2022. *See* Judgment, ECF 192.

24

This order addresses a motion for new trial filed by Defendants EHang Holdings, EHang

25

Intelligent, and Hu.[1]  For the reasons discussed below, the motion is GRANTED IN PART AND

26

DENIED IN PART.

27

---

28

[1] Plaintiff Wang's motion for attorneys' fees, costs, and interest will be addressed in a separate order.

*United States District Court*
*Northern District of California*

## I.     BACKGROUND

*Wang's Claims*

This suit arises out of Wang's employment with two related companies, EHang Holdings and EHang Intelligent.  The companies operate out of the same principal place of business in China, and their high-level executives – Hu, Xiong, Hsiao, and Liu – reside in China.  In 2015, Wang was hired as the general manager of the companies' United States office.  Wang asserts that during the interview process, he was promised Restricted Share Units ("RSUs") of EHang Holdings stock as part of his compensation.  Wang claims that he relied on that promise when he accepted the general manager position, which otherwise paid a lower salary than normal.  According to Wang, Defendants never intended to honor their promise to grant him the RSUs.

Wang worked in the general manager position for approximately one year before resigning in August 2016.  At that time, Wang requested stock certificates for 129,107 RSUs that he asserts vested during his employment.  Wang claims that Defendants responded to his request with a false promise to deliver the RSUs once an Employee Stock Option Plan ("ESOP") was adopted, but Defendants never intended to honor that promise.  Wang checked in with Defendants every few months for the next several years, inquiring about delivery of the RSUs.  He finally commenced this action in January 2020.

At the Final Pretrial Conference, the Court orally granted Wang leave to amend his pleading, and Wang filed the operative third amended complaint ("TAC") on March 7, 2022.  *See* TAC, ECF 140.  The TAC contains three claims:  (1) breach of employment contract against EHang Holdings and EHang Intelligent; (2) false promise against EHang Holdings, EHang Intelligent, Hu, Xiong, Hsiao, and Liu; and (3) failure to pay wages against EHang Holdings, EHang Intelligent, and Hu.  *See id.*  All three claims are grounded in Defendants' failure to deliver the RSUs that Wang asserts were promised to him as part of his compensation.  *See id.*

*Jury Trial*

The trial was extremely unusual, in that none of the Defendants bothered to show up.  Wang could not compel Defendants' appearance at trial because they are beyond the geographical reach of the Court.  *See* Fed. R. Civ. P.  45(c)(1).  As a result, only Wang appeared in the

2

1    courtroom to testify.  Defendant Liu was permitted to testify via video from China due to a health

2    condition that prevented his travel to the United States.  No other witnesses were called.

3         The jury appears to have credited virtually all of Wang's testimony.  On Claim 1 for

4    breach of contract, the jury found both EHang Holdings and EHang Intelligent liable.  *See* Verdict

5    at 2.  On Claim 2 for false promise, the jury found Hu liable for false promise and found EHang

6    Holdings and EHang Intelligent vicariously liable for Hu's false promise.  *See id.* at 3-6.  The jury

7    did not find Xiong, Hsiao, or Liu liable for false promise, and also rejected Wang's theory that the

8    individual Defendants conspired to make false promises to him.  *See id.*  On Claim 3 for unpaid

9    wages, the jury found EHang Holdings, EHang Intelligent, and Hu liable.  *See id.* at 8.

10        The jury awarded compensatory damages in the amount of $3,500,000, for which EHang

11   Holdings, EHang Intelligent, and Hu are jointly and severally liable.  *See* Verdict at 9; Judgment at

12   1-2.  The jury also awarded punitive damages against EHang Holdings in the amount of

13   $10,000,000 and punitive damages against Hu in the amount of $5,000,000.  *See* Verdict at 9.

14        *Court's Findings of Fact and Conclusions of Law re Equitable Estoppel*

15        Prior to the jury trial, Defendants indicated that they would assert statute of limitations

16   defenses to the claims for false promise and unpaid wages.  Wang argued that Defendants were

17   estopped from asserting statute of limitations defenses to those claims.  The parties agreed on a

18   special verdict form that asked whether the false promise and unpaid wages claims were untimely

19   and, if so, whether Defendants were estopped from asserting statute of limitations defenses.  *See*

20   Verdict at 7-8.  The Court advised the parties that the jury's findings on estoppel would be

21   advisory, however, as estoppel is an equitable issue to be determined by the Court.

22        The jury found that Wang's false promise and unpaid wages claims were untimely, but that

23   Defendants are estopped from asserting the defense of statute of limitations.  *See* Verdict at 7-8.

24   The Court issued its Findings of Fact and Conclusions of Law Re Equitable Estoppel ("FFCL") on

25   April 28, 2022, determining that Defendants EHang Holdings, EHang Intelligent, and Hu are

26   equitably estopped from asserting statute of limitations defenses to Wang's claims for false

27   promise and unpaid wages, because they intentionally acted to induce Wang to delay filing suit

28   until the limitations periods on his claims had expired.  *See* FFCL, ECF 191.

*Judgment*

On April 28, 2022, the Court entered judgment for Wang and against EHang Holdings, EHang Intelligent, and Hu, consistent with the jury's verdict and the Court's FFCL.  *See* Judgment.

## II.    LEGAL STANDARD

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1).  "Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation marks and citation omitted).  The Ninth Circuit has construed Rule 59 to permit a new trial "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Id.* (quotation marks and citation omitted).

"Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence."  *Molski*, 481 F.3d at 729 (quotation marks and citation omitted).  "[D]etermining 'the clear weight of the evidence' is a fact-specific endeavor."  *Id.*  In undertaking that endeavor, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party."  *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  However, "a district court may not grant or deny a new trial merely because it would have arrived at a different verdict" from that reached by the jury.  *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999).  A new trial should be granted only if the court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Landes*, 833 F.2d at 1372 (citation omitted).

1    III.   DISCUSSION

2          Defendants EHang Holdings, EHang Intelligent, and Hu seek a new trial on three aspects

3    of the verdict:  the jury's finding of liability on the false promise claim, the jury's award of

4    compensatory damages in the amount of $3,500,000, and the jury's award of punitive damages in

5    the amount of $15,000,000.

6          A.     Jury's Finding of Liability on False Promise Claim

7          The jury found that Hu is liable for false promise, and that EHang Holdings and EHang

8    Intelligent are vicariously liable for Hu's false promise.  *See* Verdict at 3-6.  Defendants contend

9    that the finding of liability against Hu, and by extension the finding of vicarious liability against

10   EHang Holdings and EHang Intelligent, are against the clear weight of the evidence.

11         The jury was given the following instruction on the elements of a claim of false promise:

12   **Instruction No. 47. False Promise by Individual Defendants**

13   Plaintiff Gary Wang claims he was harmed because each of the individual
     defendants Huazhi Hu, Derrick Xiong, Shang-Wen Hsiao, and Richard Liu, made a
14   false promise to him. To establish this claim against an individual defendant,
     Plaintiff must prove all of the following:

15   
16   1. That the individual defendant made a promise to Gary Wang;
     2. That the individual defendant did not intend to perform this promise when it
17      made it;
     3. That the individual defendant intended that Gary Wang rely on this promise;
18   4. That Gary Wang reasonably relied on the promise;
     5. That the individual defendant did not perform the promised act;
19   6. That Gary Wang was harmed; and
     7. That Gary Wang's reliance on the individual defendant's promise was a
20      substantial factor in causing his harm.

21   Jury Instr. No. 47, ECF 177.

22         Wang argued at trial that two false promises were made to him, one in 2015 and one in

23   2016.  During closing argument, Wang's counsel described the 2015 false promise as follows:

24   There are two false promise, one is 2015 false promise by Mr. Hu, Derrick Xiong,
     and Shang Hsiao.  That promise is the RSU promise.  You come here you work for
25   us, we will give you this many shares of RSU.  That turned out to be false, they
     never intended to enforce it, to honor that promise.

26   
27   Trial Tr., Vol. 4, 510:19-25.

28         Wang's counsel also described the 2016 false promise during closing argument:

5

> The second false promise, the minor false promise, in 2016 by Mr. Liu, Mr. Hsiao. And in 2016 when Gary was leaving, he said please give me the stock certificate. They said no, there's a delay, when ESOP is approved, you will get a stock certificate.  That promise was false, because right away, when the ESOP was approved, they concealed the news from him, they even concealed the round C news from the public, just so the RSU holder would not file lawsuit.

Trial Tr., Vol. 4, 511:17-24.

The asserted false promises also were summarized in Jury Instructions 51 and 52.  Jury Instruction 51 advised the jury that, "Gary Wang claims that Huazhi Hu, Derrick Xiong, and/or Shang Hsiao made false promises of Restricted Share Units to him in 2015 and that he relied on the false promises."  Jury Instr. No. 51.  Jury Instruction No. 52 advised the jury that, "Gary Wang claims that Huazhi Hu, Derrick Xiong, Shang Hsiao, and/or Richard Liu made false promises to Gary Wang in 2016 of issuing the stock certificate of Gary Wang's vested Restricted Share Units as soon as the Employee Stock Option Plan (ESOP) was approved and that he relied on the false promises."  Jury Instr. No. 52.

Defendants contend that Wang did not present any evidence at trial that Hu made these promises to him (the first element of a false promise claim) or that Hu did not intend to honor the promises if he made them (the second element of a false promise claim).  The Court takes up these arguments in turn.

### 1.    First Element of a False Promise Claim – Making a False Promise

With respect to the asserted 2015 promise, Defendants cite to Wang's testimony that his negotiations regarding compensation were with Defendants Xiong and Hsiao, not with Hu.  *See* Trial Tr., Vol. 1, 114:2-117:6 (Wang's testimony regarding conversations with Xiong about compensation); 117:17-119:24 (Wang's testimony regarding negotiations with Hsiao about compensation); 120:2-125:25 (Wang's testimony regarding further negotiations with both Xiong and Hsiao about compensation).  On cross-examination, Wang conceded that he did not speak to Hu about his compensation in 2015.  *See* Trial Tr., Vol. 3, 317:4-318:6 (Wang's testimony regarding his 2015 interview with Hu).  Wang testified that he had a single meeting with Hu in June 2015, which took place in China at a high-end restaurant.  *See id.*  There was no discussion of compensation at that lunch.  *See id.*  Defendants point to the following testimony in particular:

Q.   Mr. Huazhi Hu never talked with you about your compensation, correct?
A.   Not the numbers.
Q.   What do you mean not the numbers?
A.   Not the details.
Q.   Can you explain a little bit more?  When did he – let me ask you this, Mr. Huazhi Hu talked about – talked about your potential compensation at any time?
A.   Not during that lunch meeting.
Q.   Okay.  Afterwards?
A.   Generally, no.

Trial Tr., Vol. 3, 317:17-318:2.  Defendants argue that this testimony is consistent with the offer letter Wang presented at trial, providing that Wang would receive RSUs, as that offer letter was signed by Hsiao (not Hu).  *See* Offer Letter, Exh. 5 to Hartnett Decl., ECF 211-6.

With respect to the 2016 promise, Defendants point to an absence of testimony or other evidence that Wang spoke to Hu in 2016 about the RSUs or anything else.  Defendants also correctly point out that the closing argument presented by Wang's counsel did not even mention Hu in connection with the asserted 2016 false promise.  *See* Trial Tr., Vol. 4, 511:17-24.

In his written opposition to the motion for new trial on the false promise claim, Wang relies heavily on the Court's FFCL re equitable estoppel, asserting that the evidence discussed therein "plainly support[s] the jury's verdict for false promise against Defendant Hu."  Pl.'s Opp. at 4, ECF 219.  Wang's reliance on the Court's FFCL is misplaced.  As an initial matter, the FFCL does not address events that occurred in 2015.  *See generally* FFCL.  The FFCL discusses evidence that Defendants EHang Holdings, EHang Intelligent, and Hu engaged in conduct intended to cause Wang to delay filing suit after he left his employment *in 2016*.  *See id.* at 1-2.  Because it does not address the events of 2015, the Court's FFCL does not support to Wang's claim that Hu made him a false promise in 2015.

With respect to the events of 2016, the FFCL states that "Hu did not directly make representations to Plaintiff prior to December 2019."  FFCL at 10-11.  That statement undermines, rather than supports, Wang's claim that Hu made him a false promise in 2016.  The Court's determination that Hu made no representations to Wang until 2019 did not preclude the Court from finding that Hu is equitably estopped from asserting a statute of limitations defense to Wang's false promise claim.  Although a claim for false promise requires proof that the individual

7

defendant "made a promise" to the plaintiff, *see* Jury Instr. No. 47, the doctrine of equitable estoppel requires only that the individual defendant engaged in "conduct" that induced another to forbear suit, *see Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383 (2003).  In its FFCL, the Court determined that Hu's conduct in directing others to make promises that induced Wang to forbear suit was sufficient to trigger application of the doctrine.  *See* FFCL at 10-11.  That determination does not provide a basis for concluding that Hu himself made a promise to Wang in 2016.

Defendants note that Wang did not argue at trial that Hu's December 2019 statements constituted a false promise.  In December 2019, Wang contacted Hu via WeChat, complaining that Liu had not responded to his requests for the RSUs.  *See* Trial Tr., Vol. 1, 152:3-153:3.  Hu said he would tell Liu to handle it, but neither Liu nor Hu ever got back to Wang.  *See id.*  Wang testified that after his last WeChat communication with Hu on approximately December 15, 2019, "they all go quiet, radio silence, nobody respond to me anymore."  *Id.* 152:24-153:3.  It was at that point that Wang "realized they are not going to give to me the stocks. And then I started to look for legal advice or legal options."  *Id*. 153:5-8.  Wang filed suit the next month, on January 24, 2020.  *See* Compl., ECF 1.  Defendants correctly argue that based on this testimony, Wang could not have established reliance (the fourth element of a false promise claim) even if he had pursued a false promise claim based on Hu's 2019 statements.

At the hearing on Defendants' motion, Wang's counsel offered an entirely new argument that was not set forth in his written opposition.  Counsel argued that the offer letter to Wang, which was signed by Hsiao, actually constituted a false promise by Hu because Hu approved the offer letter.  In support of that argument, Wang's counsel directed the Court to trial exhibit 110-A.  Trial exhibit 110-A is an email chain that includes an email dated July 28, 2016, from Defendant Liu to other EHang employees about a potential new hire of a different employee.  In the email, Defendant Liu stated that no offer letter could be issued without Hu's approval.  Liu also testified that in 2016, Hu had to approve all offer letters.  *See* Trial Tr., Vol. 3, 424:15-20.

Wang's new argument is unpersuasive.  First, evidence that Hu had to approve all offer letters in 2016 does not establish that Hu approved Wang's offer letter a year earlier, in 2015.  Second, even assuming that Hu did approve Wang's offer letter in 2015, Wang has not cited any

1   legal authority establishing that Hu's approval of an offer letter signed by Hsiao transformed the

2   offer letter into a promise by Hu.  "A fraud claim against one entity does not generally lie for

3   statements made by another."  *Trigueiro v. Bank of Am., N.A.*, No. 2:14-CV-02556-MCE-EF,

4   2015 WL 4983599, at *12 (E.D. Cal. Aug. 19, 2015).  "A claim for fraud requires that plaintiff

5   plead that *the defendant* made a misrepresentation."  *Ohlendorf v. Am. Home Mortg. Servicing*,

6   279 F.R.D. 575, 580 (E.D. Cal. 2010) (emphasis added).

7          Third, Wang did not present his current theory of liability at trial.  While Wang did argue

8   that Hu could be liable for false promises made by Hsiao and Xiong, the basis for that argument

9   was Wang's conspiracy theory.  Wang's counsel summarized that theory in closing argument:

> 10   Another issue is conspiracy.  Why conspiracy claim?  That's for the situation, let's
> 11   say in the 2015 false claim, we know Hsiao and Xiong, the CFO and CMO made
> the false promise, we also know Gary had lunch with Mr. Hu and they talk about
> 12   the promise – how promising the company is to enhance the equity for Gary.  And
> if you find Mr. Hu did not personally make that false promise, he can still be held
> 13   liable for the false promise if you find there's certain agreement among them to
> make the false promise.

14   Trial Tr., Vol. 4, 511:25-512:8.  Wang's counsel elaborated:

> 15   Being the head of the company, being the one who has to decide who gets paid
> what, so it is more likely than not, Mr. Hu was in that agreement, even if he
> 16   personally did not say, i will give you 0.6 percent of the company's RSU.  But he
> was in agreement, that's called conspiracy.

18   Trial Tr., Vol. 4, 512:9-13.  The jury rejected this theory of liability against Hu, however, finding

19   that Wang failed to prove that there was a conspiracy among the individual Defendants to make a

20   false promise in either 2015 or 2016.  *See* Verdict at 5.

21         **2.**     **Second Element of a False Promise Claim – No Intent to Perform**

22          Defendants argue that even if Wang had presented evidence that Hu made a false promise

23   in 2015 or 2016, Wang did not present evidence that Hu did not intend to perform those promises

24   at the time the promises were made.  Under California law, affirmative evidence is required to

25   prove false promise, because "mere nonperformance is not enough to show intent to defraud."

26   *Fanucchi & Limi Farms v. United Agri Prod.*, 414 F.3d 1075, 1088 (9th Cir. 2005).  Wang does

27   not identify any evidence of Hu's intent in opposition to Defendants' motion, and the Court has

28   not found such evidence in the trial record.

United States District Court
Northern District of California

### 3.     Conclusion

After carefully reviewing the record, the Court finds no evidence that Hu made *any* promise to Wang in 2015 or 2016, and certainly no evidence that Hu made a promise to Wang in those years relating to the RSUs.  Accordingly, the Court concludes that the jury's finding of liability against Hu on the false promise claim is against the clear weight of the evidence.  The Court likewise concludes that the jury's finding of liability against EHang Holdings and EHang Intelligent on the false promise claim is against the clear weight of the evidence, as that finding depends solely on the jury's determination that EHang Holdings and EHang Intelligent are vicariously liable for Hu's false promise.  Having reached these conclusions, the Court has no alternative but to grant Defendants' motion for a new trial on the false promise claim.

The false promise claim is the only claim that could give rise to punitive damages.  The jury was instructed that punitive damages could be awarded if Defendants' conduct under the false promise claim caused harm to Wang, and Defendants engaged in that conduct with malice, oppression, or fraud.  *See* Jury Instr. No. 76.  Given the Court's determination that Defendants are entitled to a new trial on the false promise claim, the punitive damages award cannot stand.  Wang will have the opportunity to seek punitive damages during the retrial of his claim for false promise.

The motion for new trial is GRANTED with respect to the jury's finding of liability against Defendants EHang Holdings, EHang Intelligent, and Hu on the false promise claim.  The motion for new trial also is GRANTED with respect to the jury's award of punitive damages, as that award cannot stand in light of the Court's determination that a new trial must be granted on the false promise claim.  The Court observes that the new trial is limited to Wang's claims for false promise against Defendants EHang Holdings, EHang Intelligent, and Hu.  The jury found that Defendants Xiong, Hsiao, and Liu are not liable for false promise, and Plaintiff Wang did not challenge that verdict.

### B.     Jury's Award of Compensatory Damages

The jury awarded Wang compensatory damages in the amount of $3,500,000.  *See* Verdict at 9.  Defendants contend that this award is entirely speculative and unsupported by the evidence,

1    and they seek a new trial on compensatory damages.  Wang asserts that the jury's compensatory

2    damages award is supported by the evidence presented at trial.

3           The instruction on compensatory damages included the following language:

4           Plaintiff must prove the amount of his damages.  However, Plaintiff does not have
             to prove the exact amount of damages that will provide reasonable compensation
5           for the harm.  You must not speculate or guess in awarding damages.

6    Jury Instr. No. 72.

7           An officer suing for breach of a contractual agreement to grant stock options may argue

8    that the stock options should be valued as of the date of the breach or at some date subsequent to

9    the breach.  *See Moser v. Encore Cap. Grp., Inc.*, 964 F. Supp. 2d 1224, 1226 (S.D. Cal. 2012).

10   "[V]aluing stock options on the date of the breach is typically preferable to utilizing a valuation

11   date that is based solely on a plaintiff's speculation as to when he would have exercised his

12   options."  *Id*. (internal quotation marks and citation omitted).  However, if a plaintiff presents

13   credible evidence that he would have exercised his options on a later specific date, then the later

14   date may be used as the valuation date.  *See id.* at 1226-27.

15          Wang testified that if he had received the promised RSUs in December 2019, when EHang

16   Holdings' IPO occurred, he would have sold half his shares within the first year and held the other

17   half of his shares to "see if there's any potential."  Trial Tr., Vol. 2, 281:6-11.  In early 2021,

18   EHang Holdings' stock spiked in value to more than $120 per share, a significant increase over its

19   IPO price of $12.50 per share.  *See id.* 281:15-19.  However, the stock price thereafter plummeted

20   by nearly two-thirds in one day after publication of a research firm's report in February 2021.  *See*

21   *id.* 281:13-15, 20-22.  Wang testified that at that point, he would have determined that holding his

22   remaining shares was risky, and he would have sold in the first half of 2021.  *See id.* 281:23-24.

23   Wang's goal would have been to exit his stock position in a reasonable way.  *See id.* 282:4-6.

24          For the shares he would have sold in the first year after the IPO, Wang valued the shares

25   using the average stock price for the period from the December 2019 IPO through the end of 2020.

26   *See* Trial Tr., Vol. 2, 282:13-22.  For the shares he would have sold in the first half of 2021, Wang

27   valued the shares using the simple average of the stock prices during that period.  *See id.* 282:23-

28   283:3.  Wang also took into account the lost tax benefits he would have received had he been

United States District Court
Northern District of California

1    granted the RSUs as promised and held them for more than one year.  *See id.* 282:16-17.  Under

2    those circumstances, he could have taken advantage of the 20% capital gains cap.  *See id.*  Absent

3    the benefit of that 20%, Wang will have to pay 37% in federal taxes.  *See id.*  He claims the extra

4    17% of federal taxes as additional damages.  *See id.*  Using this methodology, Wang valued the

5    stocks he would have sold in 2020 at $594,215, the stocks he would have sold in 2021 at

6    $2,400,000, and the extra taxes at $513,697.  *See id.* 283:18-284:4.  Added together, those figures

7    total $3,507,912.  Wang asked the jury to award him $3,500,000 in compensatory damages, and

8    they did.

9            Defendants argue that Wang's testimony is insufficient to support the jury's compensatory

10   damages award because it is not bolstered by objective evidence confirming that Wang would

11   have followed this strategy.  Defendants cite *Moser* for the proposition that Wang was required to

12   submit "adequate evidence" regarding his intent, and that "[a]dequate evidence, in this context,

13   refers to evidence that indicates that [the plaintiff's] intent to sell on a particular date was

14   formulated before he had the benefit of hindsight."  *Moser*, 964 F. Supp. 2d at 1228.  *Moser* is

15   factually distinguishable from the present case, in that it did not involve breach of an employment

16   agreement but rather breach of a settlement agreement.  *See id.* at 1227.  In *Moser*, the plaintiff

17   claimed that as a consequence of the breach of the settlement agreement, he was entitled to the full

18   value of the salary, benefits, and stock options he would have received absent the settlement

19   agreement.  *See id.*  Under those circumstances, the district court determined that the critical date

20   for calculating damages was the date the parties entered into the settlement agreement, unless the

21   plaintiff presented adequate evidence that he would have exercised his stock options at a later date.

22   *See id.*  The district court further determined that in the context of the admittedly unique facts

23   before it, the plaintiff's showing would have to include evidence that he had a pre-existing plan to

24   exercise the stock options at a later date.  *See id.* at 1228.

25           The *Moser* court's rationale for limiting the plaintiff's calculation of damages simply does

26   not translate to the present case, in which the RSUs had relatively little value at the time of breach

27   in 2016, before EHang Holdings' IPO.  Wang testified that he initially was not concerned with the

28   delay in delivering his RSUs, because the shares had no value before the IPO, and that in fact

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1  Hsiao told him that the delay in issuing the RSUs would have no impact on Wang because he

2  could not trade or sell them before the IPO. *See* Trial Tr., Vol. 1, 146:4-7; Vol. 3, 254:23-25:3.

3  Under the facts of this case, it is entirely plausible that Wang would have held his RSUs through

4  the IPO and then followed the strategy he explained through his testimony.

5       The *Moser* court, recognizing the unique facts before it, stated that the district court's task

6  is "to draw from general principles of contract law to fashion a valuation rule that fits the specific

7  circumstances" of the case before it. *Moser*, 964 F. Supp. 2d at 1228. The *Moser* court

8  recognized that it is ultimately for the jury to determine whether a plaintiff's testimony regarding

9  his plan to exercise his stock options "is credible or is merely self-serving hindsight." *Id*. at 1229

10 (internal quotation marks and citation omitted). In this case, the jury clearly found Wang's

11 testimony to be credible, as did the Court.

12      The Court is not persuaded by Defendants' citations to out of circuit cases in which the

13 courts found that the plaintiff had not presented adequate evidence of his intent. *See Scully v. US*

14 *WATS, Inc.*, 238 F.3d 497 (3rd Cir. 2001); *Greene v. Safeway Stores, Inc.*, 210 F.3d 1237 (10th

15 Cir. 2000). Nor is the Court persuaded by Defendants' argument that Wang's valuation should be

16 limited by his 2016 offer to settle the dispute by selling the RSUs back to Defendants at a

17 discounted price. *See* Trial Tr., Vol. 2, 258:20-260:17. In the present case, Wang testified that the

18 RSUs had no value until the IPO, and he offered credible and unrefuted testimony as to how he

19 would have disposed of his EHang Holdings shares after the IPO. The Court finds that Wang's

20 testimony is sufficient to support the compensatory damages award.

21      The motion for new trial is DENIED with respect to the jury's award of compensatory

22 damages in the amount of $3,500,000.

23          **C.      Jury's Award of Punitive Damages**

24      Defendants argue that the jury's award of punitive damages in the amount of $15,000,000

25 is so excessive as to warrant a new trial on punitive damages. The Court need not address this

26 argument because, as discussed above, the punitive damages award cannot stand in light of the

27 Court's determination that Defendants are entitled to a new trial on the false promise claim.

28

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## IV.    ORDER

(1)    The motion for new trial brought by Defendants EHang Holdings, EHang

Intelligent, and Hu is GRANTED IN PART AND DENIED IN PART.  The motion

is GRANTED as to the false promise claim and the corresponding award of

punitive damages, and DENIED as to the award of compensatory damages.  The

new trial is limited to Wang's claims for false promise against Defendants EHang

Holdings, EHang Intelligent, and Hu.

(2)    A Case Management Conference is SET for December 1, 2022 at 11:00 a.m. for the

purpose of setting a trial schedule.

(2)    This order terminates ECF 211.

Dated:  October 6, 2022

BETH LABSON FREEMAN
United States District Judge

14